APPEARANCES
Plaintiff: Shankle Law Firm, P.A., Attorneys, Charlotte, North Carolina; Maggie Shankle, appearing.
Defendant: Cranfill, Sumner Hartzog, L.L.P., Attorneys, Charlotte, North Carolina; Nicholas P. Valaoras, appearing.
 ***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments before the Full Commission. Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence AFFIRMS the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The pleadings of the parties and the evidence of record establish the following:
 ISSUES *Page 2 
1. Whether Plaintiff sustained a compensable aggravation of his pre-existing right hip condition on October 21, 2006.
2. Whether Plaintiff's ongoing low back condition is compensable.
3. Whether Defendant should pay for the past medical treatment that Plaintiff has received for his right hip and low back conditions and/or ongoing treatment for said conditions.
4. To what compensation is Plaintiff entitled.
 ***********
The parties entered into the following Findings of Fact and Conclusions of Law as:
 STIPULATIONS
1. This case is subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between Plaintiff and Defendant-Employer, and Sedgwick CMS was the third-party administrator handling claims for said self-insured employer on October 21, 2006.
3. Plaintiff's average weekly wage is $930.62, with a compensation rate of $620.44.
4. Plaintiff sustained a compensable injury by accident and/or specific traumatic incident when he fell off of a ladder while changing a light in the picking room in the course and scope of employment for Defendant-Employer on October 21, 2006. Defendant admits Plaintiff injured his back but deny his hip was injured as a result of the incident.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
1. Exhibit 1: Executed Pre-Trial Agreement.
2. Exhibit 2: Plaintiff's medical records as supplemented post-hearing. *Page 3 
3. Exhibit 3: Plaintiff's medical bills.
4. Exhibit 4: Industrial Commission Forms.
5. Exhibit 5: Defendant-Employer's file documentation relating to incident.
6. Exhibit 6: Parties' discovery responses.
7. Exhibit 7: Causation letters from physicians.
8. Exhibit 8: Plaintiff's physical therapy records.
9. Exhibit 9: Short-term disability payments.
 ***********
All of the competent credible evidence of record engenders the following:
 FINDINGS OF FACT
1. Plaintiff is 42-years old, with a date of birth of July 8, 1967. He resides in Cheraw, South Carolina.
2. Defendant-Employer is a poultry processor. On the date of injury in this claim, Plaintiff was employed as a maintenance technician. Plaintiff continues to work with Defendant-Employer. Other than periods when Defendant-Employer could not accommodate Plaintiff's work restrictions, he has actively continued to work during the pendency of this claim and related treatment.
3. On Saturday, October 21, 2006, Plaintiff was changing an entire drop light weighing 35-50 pounds while standing on a ladder in the picking room at the plant. He lost his balance and fell from the ladder, falling five or six feet and landing across a conveyor belt on his back and right side, particularly his right hip.
4. Prior to the fall, Plaintiff had already been diagnosed with and treated for avascular necrosis (AVN) in his right hip. He had treated for this condition with Dr. Friedrich, *Page 4 
who performed a core decompression procedure on the femoral head on August 31, 2006. Subsequently, Plaintiff was out of work for a month and returned to full duty work in his regular position on or about September 30, 2006. Although Plaintiff was not pain-free in his right hip during the three weeks between his return to work and the fall, he was doing his job at full duty, was not using a cane or any assistive device, and was able to perform his daily activities without difficulty.
5. Although Dr. Friedrich had restricted Plaintiff from climbing ladders at the time of the fall, Plaintiff was ordered to climb the ladder and change the light by his supervisor. The fall was not precipitated by any failure of Plaintiff's right hip; rather, it occurred simply because Plaintiff lost his balance.
6. Plaintiff did not have any low back pain before the fall.
7. The next day, Sunday, October 22, 2006, Plaintiff could not attend church because of pain in his right hip, which was worse than it had been even before the core decompression procedure.
8. On Monday morning, two days after the fall, Plaintiff consulted with the plant nurse, Kiki Burney, who documented injuries to Plaintiff's back and right hip from the fall. She arranged for Plaintiff to see Dr. Daily, Defendant-Employer's company doctor.
9. After the fall, Plaintiff returned to light duty status in his work with assistance of a cane for walking.
10. On October 24, 2006, Plaintiff presented to Dr. Daily, who noted Plaintiff's prior history of AVN. Dr. Daily ordered a right hip MRI, which showed mild flattening of the femoral head. Dr. Daily ordered physical therapy. On November 29, 2006, Dr. Daily noted that Plaintiff's condition had improved. *Page 5 
11. Plaintiff also continued to treat for his right hip condition with Dr. Friedrich. Plaintiff's right hip pain fluctuated throughout the next several months following the fall. Plaintiff continued to complain to Dr. Daily of low back pain, and, on February 20, 2007, Dr. Daily referred Plaintiff to Dr. Bhagia, a physiatrist in Dr. Daily's practice who concentrates in pain management for spinal conditions.
12. On March 5, 2007, Plaintiff presented to Dr. Bhagia complaining of low back pain radiating into his buttock and occasionally into his right leg, with an occasional electric shock-type feeling down his right leg. Dr. Bhagia ordered a lumbar MRI, which was conducted on March 29, 2007. Dr. Bhagia interpreted the MRI as normal, although it did show a disc bulge at L4-L5. He diagnosed Plaintiff with a lumbar sprain/strain related to his fall at work. Dr. Bhagia saw Plaintiff a second time on April 13, 2007 and released him from treatment without restrictions related to the low back condition, sending him back to Dr. Daily for further treatment of his right hip condition.
13. On April 16, 2007, Dr. Daily examined Plaintiff's right hip and found that the recent MRI did not show any acute changes. As of that date, Plaintiff was trying to secure a promotion to a supervisor's position with Defendant-Employer, and he had to be at full-duty status in order to apply. Plaintiff requested and received a release from Dr. Daily to return to work at full duty without restrictions.
14. Plaintiff last saw Dr. Daily on July 30, 2007. At that appointment, Dr. Daily did not have any further treatment recommendations, and he again released Plaintiff without restrictions.
15. The greater weight of the conflicting evidence establishes that in the months following his last appointment with Dr. Daily, Plaintiff requested that the Defendant-Employer *Page 6 
approve return to Dr. Daily for more treatment for his right hip and low back conditions, but further treatment was refused.
16. Defendant paid for all the treatment rendered to Plaintiff by Drs. Daily and Bhagia.
17. On May 22, 2007, Plaintiff presented to Dr. Alexander, a physiatrist, for further evaluation of his back condition. Plaintiff complained of low back pain radiating into both legs, right worse than left, and tingling in his right buttock. Dr. Alexander treated Plaintiffs back pain conservatively.
18. An EMG nerve conduction study Dr. Alexander ordered on December 5, 2007 demonstrated evidence of mild chronic L4-5 and L5-S1 radiculopathies on the right. The results correlated with Plaintiff's subjective complaints. Dr. Alexander did not review the March 29, 2007 MRI results, but he agreed that his findings on the EMG study were consistent with the L4-L5 disc bulge seen on the MRI.
19. For his ongoing right hip pain, Dr. Alexander referred Plaintiff to Dr. Clark, an orthopedist in his practice who specializes in adult hip and knee reconstruction. On December 10, 2007, Dr. Clark prescribed anti-inflammatory medication and contemplated a total hip replacement if conservative management were to fail. Dr. Clark also noted that a comparison of MRIs taken on November 1, 2006 and May 31, 2007 showed the progressive degeneration in the cartilage in Plaintiff's right hip.
20. In April and May of 2008, Dr. Alexander administered a series of lumbar epidural steroid injections, which reduced Plaintiff's low back pain.
21. Plaintiff returned to Dr. Clark on June 18, 2008 complaining of significant pain into his groin. Dr. Clark recommended a total hip replacement. X-ray results suggested that *Page 7 
Plaintiff's AVN had progressed since December 10, 2007, when Plaintiff had first seen Dr. Clark.
22. Dr. Clark performed the total right hip replacement on July 29, 2008. Plaintiff was thereafter written entirely out of work during the recuperation period.
23. Plaintiff received short-term disability payments for the period from August 10, 2008 through January 10, 2009 totaling $883.53. The benefits were fully funded by Defendant-Employer.
24. Dr. Clark permitted Plaintiff to return to work on January 12, 2009, which Plaintiff did on that date.
25. Dr. Alexander does not recommend surgery for Plaintiff's low back condition, but he recommends a continuing course of conservative care in the form of injections, medications and physical therapy. Dr. Alexander has not placed formal work restrictions on Plaintiff but has advised him to work cautiously and not attempt any heavy lifting by himself.
26. As of the hearing before the Deputy Commissioner, Plaintiff continues experiencing low back pain and difficulty bending and lifting.
27. Dr. Daily is one of the main orthopedists to whom Defendant-Employer refers its workers' compensation claimants. In relation to the October 21, 2006 fall, Dr. Daily assessed Plaintiff only with a lumbar strain/contusion, and he believes that the physical therapy that he prescribed for Plaintiff was appropriate treatment for this diagnosis. In Dr. Daily's opinion, Plaintiff's fall did not contribute to Plaintiff's right hip condition, causing neither any acute change nor impacting in any way the natural progression of Plaintiff's AVN. Dr. Daily further opines that as of his examination of the Plaintiff on July 30, 2007, Plaintiff's continuing problems were unrelated to the fall. *Page 8 
28. Plaintiff did not have any radiculopathy during the time Dr. Daily treated him. As for the L4-L5 disc bulge seen on the March 29, 2007 MRI, Dr. Daily agrees with Dr. Bhagia that it was a normal finding and should not have been treated. Dr. Daily also admits that he has no knowledge as to Plaintiff's conditions since July 30, 2007. While Dr. Daily believes Plaintiff's fall did not aggravate Plaintiff's right hip condition or contribute to Plaintiff's need for the total hip replacement, he acknowledged that a fall of five or six feet could aggravate or accelerate pre-existing AVN to the point that it would require surgery.
29. Dr. Bhagia concedes that the electric shock-type feeling down Plaintiff's right leg at his first examination on March 5, 2007 could have indicated nerve root irritation. Dr. Bhagia also allows that it is "conceivable" that the symptoms that Plaintiff later described to Dr. Alexander on May 20, 2007 were in the same "spectrum" of symptoms that Plaintiff had described to Dr. Bhagia.
30. While Dr. Bhagia found no structural damage in Plaintiff's low back related to the fall, he qualified his opinion that he would want to see the results of Dr. Alexander's EMG study to be more certain. Not having the benefit of reviewing the EMG study, Dr. Bhagia was uncertain whether the further treatment for Plaintiff's low back condition was related to the fall.
31. While Dr. Bhagia did not believe that Plaintiff's continuing low back symptoms as of April 2007 were related to the fall, he deferred to Plaintiff's subsequent treating doctors for opinions on causation and treatment of Plaintiff's ongoing low back and right hip conditions.
32. Dr. Alexander's testimony establishes that the December 5, 2007 EMG results demonstrating nerve impingement would not have been revealed on an MRI or in X-rays, and a later negative lumbar myelogram did not affect his diagnosis.
33. Dr. Alexander opines that Plaintiff's low back symptoms are more likely than not *Page 9 
causally related to the October 21, 2006 fall. While he believes Plaintiff's radiculopathies have largely resolved, he recommends following Plaintiff's low back condition.
34. Both Drs. Alexander and Clark opine that Plaintiff's pre-existing AVN was exacerbated by the October 21, 2006 fall.
35. Dr. Clark specifically found Plaintiff's fall from ladder height is consistent with his findings, and the fall more likely than not significantly contributed to Plaintiff's need for ongoing treatment for his right hip condition after October 21, 2006, including but not limited to the total hip replacement.
36. Dr. Clark specifically concludes that the fall markedly irritated the cartilage lining both on the ball and in the socket of Plaintiff's right hip joint, causing acceleration in the arthritic process. The presentation of symptoms would include fluctuations in Plaintiff's reported pain levels in his right hip from the date of injury through Plaintiff's beginning treatment with him. This irritation in the hip lining would not necessarily be revealed on any imaging. Basically, as Dr. Clark observed, the fall irritated Plaintiff's right hip, and Plaintiff thereafter never returned to his pre-fall baseline but his condition continued to deteriorate ultimately necessitating the total hip replacement.
37. Dr. Clark opines that based on Plaintiff's history and his physical findings and testing results, it is more likely than not the fall caused the lining of Plaintiff's right hip joint to become irritated, which aggravated Plaintiff's right hip condition.
38. The Full Commission accords greater weight to the causation opinions of Drs. Alexander and Clark than to that of Drs. Daily and Bhagia. Dr. Clark is a specialist in hip conditions, while Dr. Daily is not a specialist. As for Plaintiff's low back treatment, Dr. Bhagia only saw Plaintiff twice and admitted he was limited in his ability to opine on causation, whereas *Page 10 
Dr. Alexander has seen Plaintiff repeatedly and performed more discreet testing.
39. The treatment that Plaintiff has heretofore received from the various providers has been reasonably required to effect a cure, provide relief and/or lessen the period of disability for his right hip and low back conditions. Plaintiff reasonably requires further treatment for these conditions to effect a cure and/or provide relief for them.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff has proven by the greater weight of the expert medical evidence that he sustained a compensable aggravation of his pre-existing right hip condition in the fall on October 21, 2006, and he has shown that the medical treatment he has received for his right hip condition has been causally related to the injury by accident. Anderson v. Northwestern Motor Co., 233 N.C. 372,64 S.E.2d 265 (1951).
2. Defendants' acceptance of Plaintiff's low back condition as compensable creates a rebuttable presumption that the medical treatment he has received for his low back has been directly related to the compensable injury. Assuming arguendo that the causation opinions of Drs. Daily and Bhagia are accepted as having rebutted the presumption, Plaintiff has proven by the greater weight of the expert opinions of Dr. Alexander that his ongoing treatment for his low back condition is causally related. Perez v. AmericanAirlines, 174 N.C. App. 128 (2005); Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
3. Plaintiff is entitled to the medical treatment that he has heretofore received for his compensable right hip and/or low back condition(s) with and/or at the direction of Drs. Friedrich, Alexander and/or Clark, including but not limited to diagnostic testing, injections, prescriptions, *Page 11 
surgeries; including but not limited to the total hip replacement, physical therapy and mileage. N.C. Gen. Stat. §§ 97-2(19) 97-25.
4. Plaintiff is entitled to have Defendant authorize and pay for further medical treatment for his compensable right hip and/or low back conditions with and/or at the direction of Drs. Alexander and/or Clark, including but not limited to diagnostic testing, injections, prescriptions, physical therapy, referrals, surgeries and mileage. Id.
5. Plaintiff has shown that he was totally disabled from July 29, 2008 through January 12, 2009, in that he was physically incapable of any employment during that time spent recuperating from his total right hip replacement. Plaintiff is entitled to temporary total disability compensation for that period, subject to full credit for the $883.53 in short-term disability compensation that Plaintiff received during said period. N.C. Gen. Stat. §§ 97-29 97-42.
 ***********
The forgoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Subject to the attorney's fee provision below, Defendant shall pay Plaintiff, in a lump sum, temporary total disability compensation in the amount of $620.44 per week for the period from July 29, 2008 through January 12, 2009, less a credit of $883.53.
2. Plaintiff shall pay an attorney fee of twenty-five percent of the disability payments awarded. The fee shall be paid by Defendant deducting the attorney fee awarded from the sums due Plaintiff and paying the same directly to Plaintiff's counsel.
3. Defendant shall pay for the medical treatment Plaintiff has heretofore received for *Page 12 
his compensable right hip and/or low back condition(s) with and/or at the direction of Drs. Friedrich, Alexander and/or Clark, including but not limited to diagnostic testing, injections, prescriptions, surgeries; including but not limited to the total hip replacement, physical therapy and mileage. To any extent that Plaintiff and/or any third-party payor have paid for such treatment, Defendant shall reimburse said payor in full.
4. Dr. Alexander is designated as Plaintiff's treating physician for his compensable low back condition, and Dr. Clark is designated as Plaintiff's treating physician for his compensable right hip condition. Subject to the limitations period of N.C. Gen. Stat. § 97-25.1, Defendant shall authorize and pay for further medical treatment for Plaintiff's compensable low back and/or right hip conditions with and/or at the direction of Drs. Alexander and/or Clark, including but not limited to diagnostic testing, injections, prescriptions, physical therapy, referrals, surgeries and mileage.
5. Defendant shall pay the costs of this action.
This the ___ day of February 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1